**LASKOWSKI, John T., Slepcevich, Emily, Kampo, Michael, Orze, Kenneth D.**

v.

**MEARS, Darlene Wanda, in her capacity as Senior Judge of the Juvenile Division of the Superior Court of Lake County, Indiana**

**Deanna Young, Michael Fontaine, Juanita Anderson, Russell Phelps, Intervenors.**

**Civ. No. H–78–444.**

United States District Court, N.D. Indiana, Hammond Division.

Jan. 25, 1985.

C. Jerome Smith, Smith & Funk, Hammond, Ind., for plaintiffs.

Charles Graddick, Graddick & Harris, Gary, Ind., for intervenors.

George Huff, Jr., Asst. Atty. Gen., Indianapolis, Ind., Stephen H. Meyer, Schererville, Ind., Martin H. Kinney, Merrillville, Ind., for defendant.

## ORDER

MOODY, District Judge.

This matter is before the Court on the Motion for Summary Judgment filed by defendant Mears on June 1, 1984. The intervening plaintiffs' Response was filed on June 14, 1984; the original plaintiffs have not responded. The motion is GRANTED in part and DENIED in part.

The original plaintiffs in this action were former employees of the defendant, Senior

Judge of the Juvenile Division of the Superior Court of Lake County, Indiana. They were dismissed by the defendant in April, 1978. The complaint, filed on November 15, 1978, alleged discrimination based on age (Age Discrimination Act, 29 U.S.C. § 621 et seq. (ADEA)) and handicap (Rehabilitation Act, 29 U.S.C. § 794, as well as violations of the plaintiffs' procedural due process rights. On January 28, 1980, several other former employees of the defendant intervened in this action alleging procedural due process violations and discrimination based on age. The intervenors also claimed that they were dismissed for political reasons in violation of their rights under the First and Fourteenth Amendments. In an amended complaint filed on July 30, 1980 the original plaintiffs added a count in which one of the plaintiffs alleged dismissal for political reasons.

As the case now stands, three of the original complainants remain, along with four intervening defendants. These plaintiffs claim the following:

John Laskowski, former probation officer and original complainant, claims violations of 42 U.S.C. § 1983 for discharge without a hearing and discharge based on age, violations of the ADEA and violations of the Rehabilitation Act;

Kenneth Orze, former probation officer and original complainant, claims violations of 42 U.S.C. § 1983 for discharge without a hearing, discharge based on age, discharge based on political affiliation, and violations of the ADEA;

Deanna Young, former probation officer and intervening plaintiff, claims violations of 42 U.S.C. § 1983 for discharge without due process, motivated by age and political affiliation;

Michael Fontaine, former probation officer and intervening plaintiff, claims violations of 42 U.S.C. § 1983 for discharge without due process, motivated by age and political affiliation;

Juanita Anderson, former probation officer and intervening plaintiff, claims violations of 42 U.S.C. § 1983 for discharge without due process, motivated by age and political affiliation, and violations of the ADEA;

Emily Slepcevich, former assistant superintendent of the Juvenile Detention Center and original complainant, claims violations of 42 U.S.C. § 1983 for discharge without a hearing, discharge based on age, and violations of the ADEA;

Russell Phelps, former teacher at the Lake County Juvenile Center and intervening plaintiff, claims violations of 42 U.S.C. § 1983 for discharge without due process, motivated by age and political affiliation.

Each of these plaintiffs requests reinstatement, compensation for loss of employment rights and benefits, and liquidated damages for intangible injuries.

In an order dated June 18, 1982, this court denied all pending dispositive motions. At that time, I ruled that Indiana Code § 33–5–29.5–8 [1] is constitutional. An-

---

1. In 1982, the provision read in pertinent part
   The senior judge of each division may appoint such number of bailiffs, court reporters, probation officers, and such other personnel, as shall in the opinion of the senior judge be necessary to judicially and efficiently facilitate and transact the business of the division. The senior judge of the criminal division, with consent of the judges of said division, may appoint one commissioner pursuant to IC 34–1–25.1–1 and 34–1–25.1–2. All such appointments shall be made without regard to the political affiliation of the appointees. The salaries of the above personnel shall be fixed and paid as now or hereafter may be provided by law. The officers and persons so appointed shall perform such duties as are prescribed by the senior judge of each respective divi-

sion. Any such bailiffs, court reporters, probation officers, and other personnel appointed by the senior judge of any respective division shall serve at the pleasure of said senior judge.
   The court shall appoint an administrative officer who shall have such duties as the court shall determine necessary to insure the efficient operation of the court. The court may appoint such number of deputy administrative officers as the court deems necessary to facilitate and transact the business of the court. Any appointment of an administrative officer or deputy administrative officer shall be made without regard to the political affiliation of the appointees. The salaries of the administrative officer and any deputy administrative officer shall be fixed by the court, to

cillary to that decision, I noted that "there is absolutely no language in the statute or in the case law interpreting that statute which indicates that the Indiana Legislature intended to permit state judges to dismiss court personnel for reasons of age or handicap where the dismissal would violate federal law." Order of June 18, 1982, at page 3. The Order also states that the express language of § 33–5–29.5–8 forbids dismissal of court personnel based on their political affiliation. I reserved ruling on the questions of whether the defendant is an "employer" under the ADEA and whether certain Lake County officials should be joined in this action.

The Order of July 21, 1982 denied the defendant's Motion for Dismissal filed July 12, 1982. In that order, I considered the defendant's bare assertion that the plaintiff's claims were barred by judicial immunity. Based on the defendant's lone citation to *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), I found that the judge's acts dismissing plaintiffs were administrative rather than judicial.

The defendant's motion for summary judgment now pending resurrects many of these old issues and raises new problems as well. The motion relies heavily on *Blackwell v. Cook*, 570 F.Supp. 474 (N.D. Ind.1983).

The defendant first asserts, based on the ruling in *Blackwell* and the decision in *Pruitt v. Kimbrough*, 536 F.Supp. 764, 767 (N.D.Ind.1982), that the discharge of a probation officer is a judicial act. Secondly, again citing *Blackwell* extensively, defendant Mears argues that none of the plaintiffs had a right to due process notice and

hearing before discharge. This rule extends, the motion states, to both the non-probation officer parties and the probation officers. Further, defendant argues that the non-probation officers were discharged for cause. Finally, Mears asserts that Kenneth Orze's termination was not a patronage dismissal, but a discharge for engaging in partisan political activity and for insubordination. In a supplement to the motion, filed July 20, 1984, the defendant sets out her reasons for discharging Russell Phelps from his teaching position.

The intervening plaintiffs' Memorandum in Opposition to defendant's motion is quite brief. These four plaintiffs simply question the *Blackwell* decision and reiterate plaintiff Anderson's ADEA claim. The plaintiffs also contend without benefit of citation that I.C. § 11–13–1–1(c) [2] is unconstitutional.

### 1. Judicial immunity

■ Defendant Mears is the Senior Judge of the Juvenile Division of the Superior Court of Lake County, Indiana. As such, she is a judicial officer of the state judicial system, *Pruitt v. Kimbrough*, 536 F.Supp. 764, 766 (N.D.Ind.1982), and she may invoke judicial immunity for acts within her "judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 1107, 55 L.Ed.2d 331 (1978); *Blackwell v. Cook*, 570 F.Supp. 474, 472 (N.D. Ind.1983). The question at bar is whether Mears' acts in discharging the plaintiffs were acts taken in her judicial capacity.

Indiana Code § 11–13–1–1 governs the appointment of probation officers. The provision directs that "probation officers

---

be paid out of the county treasury by the county auditor, upon the order of the court, and entered of record. Any such administrative officer or deputy administrative officer appointed by the court shall operate under the jurisdiction of the chief judge and shall serve at the pleasure of the chief judge.
I.D. § 33–5–29.5–8 (1980).
The statute was amended in 1983.

**2.** Indiana Code § 11–13–1–1(c) states that:
Probation officers shall serve at the pleasure of the appointing court and are directly

responsible to and subject to the orders of the court. The amount of time of payment of salaries of probation officers shall be fixed by the court consistent with section 8 of this chapter to be paid out of the county or city treasury by the county auditor or city controller. Probation officers are entitled to their actual expenses necessarily incurred in the performance of their duties. Probation officers shall give a bond if the court so directs in a sum to be fixed by the court.

shall serve at the pleasure of the appointing court and are directly responsible to and subject to the order of the court." Indiana Code § 35–5–29.5–8 further directs that such personnel shall serve at the pleasure of the senior judge of the division. It appears that Plaintiff Slepcevich, assistant superintendant of the Juvenile Detention Center, and Russell Phelps, former teacher at the center, were appointed pursuant to I.C. § 33–5–29.5–8. Paragraph (a) of that section provides for appointment of bailiffs, court reporters, probation officers, and "such other personnel" to serve "at the pleasure of the senior judge." Paragraph (b) states that "[t]he court may appoint such number of deputy administrators as the court shall determine necessary to facilitate and transact the business of the court," and that these administrators "shall serve at the pleasure of the chief judge." [3]

In *Blackwell v. Cook,* 570 F.Supp. 474 (N.D.Ind.1983), Judge Sharp of this District examined the availability of judicial immunity for acts taken pursuant to I.C. § 11–13–1–1. The facts were similar to those at bar. The case was filed under 42 U.S.C. § 1983 by a former employee of the Probation Department, against her putative employer, the Judge of the Marshall County Circuit Court. Ruling on a motion for summary judgment, Judge Sharp found that the defendant was wholly shielded from Blackwell's claims by the doctrine of judicial immunity.

*Blackwell* holds that allowing the probation officer's § 1983 suit could "impair, interfere, or otherwise affect the discretion" of the judge because of the "special and confidential relationship" between a judge and a probation officer. *Id.* at 479. The decision is not, however, of precedential value in this court. In light of the paucity of case law on the availability of judicial immunity for personnel decisions, I will re-examine the issue with reference to the history of judicial immunity and current doctrine. *See generally* Annot., 55 L.Ed.2d 850 (1978).

Long ago, the Supreme Court recognized that judicial officers in general are not subject to civil liability for judicial acts done within their jurisdiction. *Wilkes v. Dinsman,* 48 U.S. 89, 12 L.Ed. 618 (1849). In contemporary law, judges of general jurisdiction are granted immunity for judicial acts, even if they are in excess of the judge's jurisdiction, so long as he or she has not acted in the clear absence of all jurisdiction over the subject matter. *Pulliam v. Allen,* —— U.S. ——, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984); *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Alzua v. Johnson,* 231 U.S. 106, 34 S.Ct. 27, 58 L.Ed. 142 (1913); *Spalding v. Vilas,* 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896); *Bradley v. Fisher,* 80 U.S. (13 Wall) 355, 20 L.Ed. 646 (1872); *Randall v. Brigham,* 74 U.S. (7 Wall) 523, 19 L.Ed. 285 (1869). In *Pulliam v. Allen,* —— U.S. ——, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), a case decided since Sharp's *Blackwell* opinion, the Supreme Court quoted an old chestnut which enunciated this "contemporary understanding" of the doctrine:

> "It ·is essential in all courts that the judges who are appointed to administer the law should be permitted to administer it under the protection of the law, independently and freely, without favor and without fear. This provision of the law is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence, and without fear of consequences." *Scott v. Stansfield,* 3 LR–Ex, at 223, quoted in *Bradley v. Fisher,* 13 Wall 335, 350 n, 20 L.Ed. 646 (1872).

*Pulliam,* —— U.S. at ——, 104 S.Ct. at 1976, 80 L.Ed.2d at 573.

Because the immunity doctrine was created to preserve judicial independence, the central debate has always been the limits

---

**3.** The different provisions and duties noted in these statutes may affect the availability of the judicial immunity defense as to each plaintiff. The same act may be "judicial" when addressed to a probation officer, while outside judicial capacity when addressed to "such other personnel" as supervisors and teachers.

of the judge's power and responsibility to administer the law—his or her jurisdiction. The most recent Supreme Court statement of the two-part test for "judicial acts" was that quoted by Judge Sharp in *Blackwell:* (1) whether it is a function normally performed by a judge, and (2) whether the parties dealt with the judge in his judicial capacity. *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 1107, 55 L.Ed.2d 331 (1978).

In *Stump v. Sparkman*, an Indiana Circuit Court judge approved a mother's petition to have her "somewhat retarded" minor daughter sterilized. A few years later, the daughter discovered that she had been sterilized, and she sued the judge under 42 U.S.C. § 1983. The Supreme Court granted immunity because "[t]he Indiana law vested in Judge Stump the power to entertain and act upon the petition for sterilization." To decide that the judge did not act in "a clear absence of all jurisdiction," the Court examined Indiana code § 33–4–4–3 (1975). That provision is labeled "Jurisdiction" and sets out the jurisdiction of an Indiana Circuit Court.

The defendant here is a judge of the Lake County Superior Court. Her jurisdictional grant appears at I.C. § 33–5–29.5–4.[4] Separate sections grant the "Power and authority of court"[5] and "Additional circuit court powers."[6] Section 33–5–29.5–8 is titled "Appointment of personnel; duties; salaries;" it is this section under which defendant Mears discharged the former teacher and supervisor now suing. The

probation officers were discharged under I.C. § 33–5–29.5–8 and I.C. § 11–13–1–1, labelled "Probation officers; appointment; qualifications; term, responsibility, salaries, expenses, bond."

■ These statutes clarify that hiring and firing are functions normally performed by a judge, meeting the first prong of the *Stump v. Sparkman* test. But unlike Judge Stump's acts, the acts of which the plaintiffs complain here are not even arguably within the ambit of the Indiana Legislature's jurisdictional grant or the "power and authority" extended to the Lake Superior Court. Defendant Mears might argue that the personnel statutes augment the jurisdictional provisions and specifically grant judicial power to appoint these officers. This is a hard case to make. No legislative history supports that construction. No Indiana cases speak to the point. And the provisions themselves are labelled to suggest that personnel decisions are separate from the jurisdiction, power and authority of the court.

The statutes are not decisive of the matter, however. The *Stump v. Sparkman* test deliberately alters the inquiry from one of formal jurisdiction to one which includes the parties' own expectations and understandings. Whether the relationship between a given probation officer and a particular judge creates a need for immunity to preserve independent administration of the law, i.e. whether the relationship can be said to be dominated by acts taken in

---

**4.** I.C. § 33–5–29.5–4 provides:

The court, within and for the county of Lake, has the same jurisdiction as the Lake Circuit Court in all civil and probate cases and matters whether original or appellate, has original exclusive jurisdiction of all felony cases and such appellate jurisdiction in criminal cases as is vested in the circuit court, and has original exclusive juvenile jurisdiction.

**5.** I.C. § 33–5–29.5–6 grants that

The court shall have full power and authority to make and adopt rules and regulations for conducting the business of the court, not repugnant to the laws of this state, and the rules of the Supreme Court of Indiana, and shall have all the powers incident to a court of record in relation to the attendance of witnesses, the punishment of contempts, and the

enforcement of its orders. The judges shall have the full authority to administer oaths, solemnize marriages, take and certify acknowledgements of deeds, and all legal instruments, and to give all necessary certificates for the authentication of the records and proceedings in the court.

**6.** At I.C. § 33–5–29.5–7, the Lake Superior Court is given power ... to grant restraining orders, injunctions, and writs of ne exeat, to issue writs of habeas corpus, to appoint receivers, masters, and commissioners to convey real property, and to grant commissions for the examination of witnesses, and to appoint other officers necessary to facilitate and transact the business of the court as is now or may hereafter be conferred on circuit courts or the judges thereof in counties where there is no criminal court.

the judge's "judicial capacity" within the meaning of *Sparkman,* is a question of fact. *See e.g., Goodwin v. Circuit Court of St. Louis County,* 729 F.2d 541, 548–59 (8th Cir.1984) (judge's dismissal of hearing officer who exercised independent judgment and provided "advice" of a formal, detached nature to judge was administrative personnel decision). *See generally Gabe v. County of Clark,* 701 F.2d 102 (9th Cir.1983) (judge's secretary may bring § 1983 suit against former employer); *Cronovich v. Dunn,* 573 F.Supp. 1340, 1342 (E.D.Mich.1983) (scope of immunity granted judges in making personnel appointments is confused); *Lewis v. Blackburn,* 555 F.Supp. 713 (W.D.N.C.1983) (state court judge not immune from § 1983 suit for decision not to reappoint magistrate); *Marafino v. St. Louis County Circuit Court,* 537 F.Supp. 206 (E.D.Mo.1982) (juvenile court staff attorney akin to law clerk and could invoke Title VII coverage for discriminatory dismissal); *Clark v. Campbell,* 514 F.Supp. 1300 (W.D.Ark.1981) (county judge, in hiring or firing county employees, performs administrative and ministerial duties); *Shore v. Howard,* 414 F.Supp. 379 (N.D.Texas 1976) (circuit court judge's dismissal of probation officer is ministerial act for which there is no immunity). *Contra, Abbott v. Thetford,* 534 F.2d 1101, 1103 (5th Cir.1976) (judicial officer entitled to immunity from suit for discharge of chief probation officer).

Judge Sharp is ready to impute a special status to the judge-probation officer relationship, writing that this "is [not] a situation where the judge is acting solely as an employer." *Blackwell,* 570 F.Supp. at 479. I don't agree with this rule of thumb. Employers in all professions enjoy close and interdependent relationships with their employees, yet they may be sued for civil rights violations. Unless the judge's relationship with his or her probation officer is something more unusual as a factual matter, a relationship which implicates the judge's independence, then there is no argument that the "nature of the act" of discharge was "a judicial act." Judge Mahan expressed this distinction eloquently in

*Shore v. Howard,* 414 F.Supp. 379, (N.D. Texas 1976) writing that

> Common-law immunities extend only so far as the interests of the common good demand protection for the holder of the office from liability for carrying out his official functions. The application of the doctrine of judicial immunity is restricted to its single objective of protecting judicial freedom in the process of deciding civil and criminal cases. Where the initiative and independence of the judiciary is not effectively impaired, the doctrine of judicial immunity does not hold. *See Doe v. County of Lake, Indiana,* 399 F.Supp. 553, 555–560 (N.D.Ind.1975).

*Id.* at 385.

In the case at bar, the facts which might implicate judicial independence are as yet undisclosed. I do not know how closely Judge Mears worked with her probation officers, the teacher, or the supervisor, though the case for judicial immunity against the suits of these latter two is admittedly very weak. Summary judgment at this stage would be inappropriate.

2. Procedural due process

■ *Blackwell* rules in the alternative, and the second of its holdings is less controversial. Judge Sharp ruled that as a matter of law, no expectation of employment, no de facto tenure and no implied promise to dismiss could arise in the face of I.C. § 11–13–1–1(c): "Probation officers shall serve at the pleasure of the appointing court and are directly responsible and subject to the order of the court." 579 F.Supp. at 480. This conclusion is sound, and this court concurs that the ex-probation officers cannot sue Judge Mears for failure to accord procedural due process. *See Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 11, 98 S.Ct. 1554, 1561, 56 L.Ed.2d 30 (1978); *Bishop v. Wood,* 426 U.S. 341, 344–45, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Perry v. Sindermann,* 408 U.S. 593, 602 n. 7, 92 S.Ct. 2694, 2700 n. 7, 33 L.Ed.2d 570 (1972).

■ *Blackwell* does not, of course, speak to the procedural due process rights

of Stepcevich and Phelps. The second paragraph of I.C. § 33–5–29.5–8 specifically provides that deputy administrative officers serve at the pleasure of the chief judge. This section applies to Stepcevich. Mears is the senior judge rather than the chief judge, and it may prove that the court failed to follow statutory procedures. Since Stepcevich can claim a due process right in these statutory procedures, her procedural due process claim withstands the defendant's challenge.

■ Phelps was a teacher, presumably appointed as "other court personnel" pursuant to I.C. § 33–5–29.5–8. Since the statute does not specifically name his position, a factual issue remains as to whether he knew or should have known of his quasi-"at-will" status. Phelps also withstands this portion of the motion for summary judgment, and may argue his procedural due process rights at trial.

3. Discharge for cause, partisan political activity, insubordination, and incompetence

As to Phelps, Orze, and Stepcevich, defendant Mears argues that each was dismissed for legitimate nondiscriminatory reasons, and she asserts facts in support of each discharge.

It is well established that in deciding a motion for summary judgment, the Court must take all inferences favorable to the non-moving party as true. *Adickes v. Kress & Company,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Egger v. Phillips,* 669 F.2d 497, 502 (7th Cir.1980); *Peoples Outfitting Co. v. General Electric Credit Corp.,* 549 F.2d 42, 45 (7th Cir.1977). If any doubt remains as to the existence of a genuine issue of material fact, such doubt must be resolved against the movant of summary judgment. *Wolston v. Reader's Digest,* 443 U.S. 157, 162 n. 5, 99 S.Ct. 2701, 2705 n. 5, 61 L.Ed.2d 450 (1979); *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Further, summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *S.J. Groves v.*

*International Brotherhood of Teamsters,* 581 F.2d 1241 (7th Cir.1978).

■ Each of these three defendants alleges violations of § 1983 based on age. Orze and Phelps add a claim of discharge based on political affiliation. Orze and Stepcevich also claim under the ADEA. Mears' affidavits and assertions regarding good cause for the plaintiffs' discharge do not resolve the motivational elements required to prove each claim. The question is not whether there were any conceivable good reasons for the discharges, or whether some of the defendant's reasons were good. The Court must determine whether discriminatory motives were present—a fact which is difficult to prove or disprove by affidavit. This portion of the motion for summary judgment is therefore denied.

4. Constitutionality of I.C. § 11–13–1–1(c).

The intervening plaintiffs' Memorandum in Opposition to defendant's motion contends that I.C. § 11–13–1–1(c) is unconstitutional. This is a bare assertion with no supporting citation or argument. Without more, it does not merit consideration.

*Summary*

It is therefore ORDERED that the Motion for Summary Judgment is GRANTED in part and DENIED in part, as follows:

1. Summary judgment on the issue of judicial immunity is DENIED. The issue remains to be decided at trial.

2. Summary judgment is GRANTED as to the procedural due process claims for the ex-probation officer plaintiffs. Summary judgment as to the procedural due process claims of Stepcevich and Phelps is DENIED.

3. Summary judgment is DENIED as to the defendant's claims that Phelps, Orze and Stepcevich were discharged for legitimate, non-discriminatory reasons. Factual issues remain to be resolved before such determinations can be made.

4. The intervening plaintiffs have not properly raised the issue of the constitutionality of I.C. § 11–13–1–1(c)

and it will not be considered further at this time.